IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christopher Valley,

    Plaintiff,

  v.

Genoa Township, *et al.*,

    Defendants.

Case No: 2:14-cv-2641

Judge Graham

Opinion and Order

Plaintiff Christopher Valley brings this age discrimination and retaliation action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, against defendants Genoa Township and Township Administrator Paul Wise. Valley served as a part-time firefighter for the Township and alleges that he failed to receive a full-time position because he was over forty years of age. He further alleges that when he questioned his supervisors about why he did not receive the full-time position, defendants retaliated against him by suspending him and later terminating him from his duties as a part-time firefighter.

This matter is before the court on defendants' motion for summary judgment. Defendants argue, among other things, that plaintiff did not timely file a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC), that defendants had legitimate, non-discriminatory reasons to not hire plaintiff for a full-time position, and that plaintiff did not engage in protected activity for purposes of his retaliation claim.

For the reasons stated below, defendants' motion for summary judgment is granted.

**I.    Background**

Valley, who was born in April 1972, began employment as a part-time firefighter for the Genoa Township Fire Department in 2007. (Doc. 20-5 at PAGEID 298-99). Valley received good annual performance reviews, including for 2012. (Doc. 24-1, Valley Aff., ¶ 2; Doc. 24-5, Spitler Dep. at 24).

In 2012, the Fire Department posted that it would accept applications for full-time and part-time firefighter positions. The Department later determined to that it would fill two full-time

positions. Valley was one of 32 applicants. Beginning in August 2012, the applicants took a written, "fire based and general knowledge" test, as well as a physical agility test. (Doc. 20-3 at PAGEID 185). Candidates who performed satisfactorily on both tests, as Valley did, then underwent interviews with a panel and with Fire Chief Gary Honeycutt, a psychological test, a physical examination and a background check. (Doc. 20-3 at PAGEID 183, Honeycutt Aff., ¶¶ 4-8).

At the end of the process, Chief Honeycutt ranked the candidates based on their scores from the panel interview. (Honeycutt Aff., ¶8; Doc. 24-2, Honeycutt Dep. at 28). The panel had four members, including the Deputy Chief and three Captains. (Spitler Dep. at 18-19). Each panel member assigned scores based on the candidate's answers to a pre-selected set of questions and on the candidate's appearance and ability to communicate. (Doc. 20-3 at PAGEID 189-91).

Honeycutt record the panel interview scores on a spreadsheet or matrix. (Doc. 20-3 at PAGEID 188). The matrix listed the scores that each candidate received from each panel member, and it ranked the candidates according to their average score. Alongside these scores, Honeycutt also listed the candidates' written test scores. Honeycutt used the panel rankings and test scores to select who would be offered the full-time positions. (Honeycutt Dep. at 28). Valley ranked seventh based on the scores from the panel interview, with an average score of 124. (Doc. 20-3 at PAGEID 188). Valley's written test score was 79. (Id.).

Honeycutt removed the first-ranked candidate (who had a panel score of 140) from consideration because of his relatively low written test score (73). (Honeycutt Aff., ¶10). Honeycutt offered the full-time positions to the second- and third-ranked candidates (panel scores of 139 and 137 and respective written test scores of 82 and 84). When the third-ranked candidate declined the offer, that position was then offered to and accepted by the fourth-ranked candidate (panel score of 137 and test score of 83).[1] (Id., ¶¶10-12). The Township Board of Trustees approved of the Honeycutt's hiring recommendations on January 3, 2013. (Doc. 20-1 at PAGEID 147-48).

On December 17 or 18, 2012, Honeycutt spoke with Valley in his office for about ten minutes and advised Valley that he would not be hired for one of the full-time positions. (Honeycutt Dep. at 8; Doc. 20-5, Valley Dep. at 155)). Valley asked why he was not selected and Honeycutt explained that he did not rank high enough in the panel interview and written test scores. (Honeycutt Dep. at 8-9; Valley Dep. at 153-54).

---

[1] It is unclear exactly how old the second- and fourth-ranked candidates were, but a colleague testified that they were under the age of 40. (Doc. 24-2, Weekly Dep. at 44).

Valley pressed Honeycutt to further explain why he did not get selected. Honeycutt referred to concerns that the background check indicated there were felony charges against Valley, including several charges that Honeycutt had not been aware of. (Honeycutt Dep. at 17; Valley Dep. at 154). Valley responded that there were no such charges beyond one from 2007 that Valley had already told Honeycutt about.[2]

Honeycutt also referred to the results of the psychological test. According to Valley, Honeycutt mentioned "red flags" from Valley's psychological test, but Valley disputed that they should be attributed any significance. (Valley Dep. at 154). Honeycutt said that he did not want to argue with Valley about it. (Id. at 155). Honeycutt said that he was done discussing the matter, and Valley "stormed out." (Honeycutt Dep. at 8). Valley did not make any assertions to Honeycutt that he thought that age discrimination was the reason that he did not get selected for a full-time position. (Valley Dep. at 157-58).

Valley felt like he was not getting a "legitimate answer" from Honeycutt and that the process was not fair. (Valley Dep. at 155, 162). He contacted a Township Trustee, who instructed Valley to speak with Township Administrator Paul Wise. (Id. at 159-60). Valley arranged to meet Wise on December 26, 2012 at the Township administration building. (Id. at 161). At the meeting, which was also attended by legal counsel for the Township, Valley told Wise that he had talked to Honeycutt about not getting a full-time position and that Honeycutt provided "vague reasons" that "didn't make any sense." (Id. at 161). Valley disputed that he had felony charges beyond the one from 2007, and he said that he was confused about the red flags from the psychological test. Valley also discussed his experience as a firefighter with Wise and addressed a few minor incidents or "run-ins" between Valley and other Township firefighters. (Id. at 162-66). At the meeting's end, Wise said that he would talk to Honeycutt. (Id. at 166). Valley did not make any assertions to Wise that he thought that age discrimination was the reason that he did not get selected. (Id. at 166).

---

[2] The background check showed four more felony charges. (Honeycutt Dep. at 19). Honeycutt did not examine the matter further because Valley's panel and test scores were too low for him to be selected. But Honeycutt brought up the felony charges so Valley would understand that, even if his scores had been higher, the charges stood as a potential obstacle to him getting a full-time position. (Id. at 17-19).

Plaintiff's brief asserts, without citing evidence in support, that the felony charges reported on the background check were false results from an investigator who incorrectly ran a felony docket report. (Doc. 24 at PAGEID 394). Even if true, plaintiff has not shown that Honeycutt knew that the background check had yielded false results.

During this time frame, Honeycutt became aware from another firefighter that Valley may have been the subject of a sexual harassment investigation at Columbus State Community College. (Honeycutt Dep. at 20-21, 31). Valley had served as a Preceptor for Columbus State's Emergency Medical Services Technology program. He trained students in the classroom and in hospitals and emergency rooms. (Valley Dep. at 78-79). Though he did not issue grades, Valley assisted in evaluating students. (Id. at 101-02).

At some point between December 18 and 26, 2012, Honeycutt told Wise that he had heard there had been an investigation of Valley and that he had resigned as a Preceptor at Columbus State. (Honeycutt Dep. at 23-24, 31; Doc. 24-3, Wise Dep. at 75-76). On his application for full-time employment with the Township Fire Department, Valley disclosed that he had resigned from Columbus State because of "child care and time restraints." (Doc. 20-5 at PAGEID 300).

On December 27, 2012, Wise advised Valley by letter that the Township would be conducting an investigation of him and that he was to not to report to work until further notice. (Doc. 20-1 at PAGEID 124). On January 3, 2013, Wise provided Valley with a notice to appear at an investigatory interview about the circumstances of his separation from Columbus State. (Id. at 125). The interview was conducted on January 15, with Wise, Valley and legal counsel for both sides present. (Id. at 126). Valley explained that he had engaged in "flirting" texts with two female students in his class in 2011. (Id. at 135-36). He acknowledged that some of the texts were inappropriate but maintained that the students were about his age (in their 30s or 40s) and that the texting was mutual and consensual. (Id. at 141). One of the students complained of sexual harassment, and Columbus State placed Valley on paid leave, at which point Valley resigned from his position as Preceptor on or about July 8, 2011. (Id. at 138-41; Doc. 20-5 at PAGEID 277).

After the January 15, 2013 interview, Wise made a public records request to Columbus State regarding their investigation of the sexual harassment complaint against Valley. Columbus State produced redacted documents on March 5, 2013. (Doc. 20-1 at PAGEID 170). The documents included a memorandum written by Columbus State's EEO Coordinator in which she detailed the allegations made by the complainant and the responses Valley provided to her in an interview. (Id. at 171-73). According to the memo, Valley admitted that he engaged in texting of a sexual nature with students, engaged in inappropriate joking and banter during class and had made comments about the looks of a woman to male students. The complainant also alleged that Valley retaliated against her – by not giving her a passing assessment – after she declined to engage in sexual activity with him. The Coordinator found that Valley had violated Columbus State's sexual harassment

4

policy because he had engaged in joking of a sexual nature in class and engaged in a relationship with a student. (Id.). Columbus State also produced a personnel action, dated July 13, 2011, reflecting Valley's resignation and the human resources department's recommendation that Valley not be rehired. (Id. at 175).

The Township Board of Trustees held a pre-disciplinary hearing on June 6, 2013 concerning Wise's investigation of Valley. Wise summarized his investigation and the documents he had received from Columbus State. Wise then stated that he believed Valley should be disciplined under the Township's personnel policy regarding off-duty conduct. (Doc. 20-8, June 6, 2013 Hr'g Tr. at 21-23) Under that policy, an employee may be disciplined "for off-duty conduct that damages the reputation of the employer, impacts the ability of the employer to fulfill its mission, the ability of the employee to perform his/her job, or will result in the reluctance of other employees to work with the employee and impacting their ability to perform their jobs." (Doc. 20-1 at PAGEID 110). Wise felt that Valleys' conduct at Columbus State violated the Township's policy because it damaged the reputation of the Fire Department and impacted the ability of the Department to fulfill its mission and the ability of the employee to perform his job. (Hr'g Tr. at 23).

Legal counsel for Valley then presented testimony and evidence in response. Valley testified and acknowledged having engaged in mutual sexual bantering but denied that his conduct could be characterized as harassment of female students. (Hr'g Tr. at 108-09, 148-50). He further testified that he did not believe that he was acting as an ambassador of Genoa Township in his role as Preceptor because he did not wear his firefighting uniform or badge. (Id. at 135-36). He could not remember whether he told students that he served as a Township firefighter. (Id. at 137). When asked about having stated on his job application to the Township that he left his position at Columbus State due to child care and time restraints, Valley stated that he did not want to "disparage a former employer" and that he had time and child care demands which prevented him from being able to refute or fight Columbus State's investigation of him. (Id. at 133-34).

At the conclusion of the June 6, 2013 hearing , which lasted from 7:30 p.m. to 1:00 a.m., the Board of Trustees met in executive session and decided they would like additional time to further review the documents and obtain a transcript of the hearing. (Hr'g Tr. at 170-71). They scheduled a special session for June 19, 2013. (Id. at 171). Neither Wise nor Honeycutt attended the executive sessions or participated in the Board's deliberations. (Doc. 20-1 at PAGEID 104, Wise Aff., ¶ 6; Honeycutt Aff., ¶ 14).

At their June 19, 2013 meeting, the Board approved an action to terminate Valley immediately based on a violation of the Township's policy regarding off duty conduct. (Doc. 20-1 at PAGEID 167). Valley received notice of his termination and the basis for his termination by letter dated June 19. (Doc. 20-1 at PAGEID 146).

Valley did not file an appeal of the Board's termination of his employment. Under Ohio Revised Code § 505.38, the decision to remove any member of the fire department of a township or fire district may be appealed to the appropriate county court of common pleas.

Valley filed a Charge of Discrimination with the EEOC and Ohio Civil Rights Commission on November 20, 2013. (Doc. 20-10 at PAGEID 376). In the Charge, Valley alleged that he was 41 years old and had been discriminated against because of his age and had been retaliated against because he had complained to Wise about not being hired as a full-time firefighter. (Id.).

The EEOC issued a right to sue notice to Valley on December 30, 2014. (Doc. 20-10 at PAGEID 377).

Valley filed this action on December 16, 2014, prior to the issuance of the right to sue notice. Valley amended his complaint on January 21, 2015. The amended complaint asserts four causes of action: (1) age discrimination under the ADEA as to defendants' failure to hire Valley to a full-time position; (2) retaliation under the ADEA as to defendants' suspension and termination of Valley after he questioned why he was not hired full-time; (3) violation of the First Amendment as to defendants' retaliation against Valley for questioning why he was not hired full-time; and (4) wrongful termination under state law.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

### III. Discussion
#### A. Age Discrimination
##### 1. Timeliness of the EEOC Charge

Defendants argue that the age discrimination claim is barred because plaintiff failed to timely file a discrimination charge with the EEOC. In a state, like Ohio, with its own employment-discrimination laws, a plaintiff must file a complaint with the EEOC within 300 days of an alleged discriminatory act. Amini v. Oberlin Coll., 259 F.3d 493, 498 (6th Cir. 2001) (holding that a "300–day time limit for filing a charge with the EEOC applies in age discrimination cases brought under the ADEA").

Here, on January 3, 2013 the Board of Trustees approved of Honeycutt's selections to fill the two full-time positions. Plaintiff filed his charge on November 20, 2013, after the 300-day time period reached its end on October 30.

Plaintiff argues that the 300-day period should be equitably tolled because of affirmative misconduct on the part of defendants. See Hampton v. Caldera, 58 Fed. App'x 158, 160 (6th Cir. 2003) (noting that equitable tolling may be justified "when affirmative misconduct by the defendant lulled the plaintiff into inaction"). However, he fails to cite any misconduct other than defendants' alleged retaliatory suspension of him, which was an employment action that, if anything, put plaintiff on notice that defendants were acting adversely to his interests. The December 27, 2012 suspension letter instructed him not to come onto work premises and not to contact Township employees during work hours. Plaintiff admits that the suspension left him "shocked at how quickly [things] escalated" and reinforced his belief that he was being treated unfairly. (Valley Aff., ¶¶ 19, 27, 29). And receipt of the January 3, 2013 notice to appear at an investigatory interview caused plaintiff to retain legal counsel – the same legal counsel who represents plaintiff in this action. In sum, plaintiff has not demonstrated that defendants "lulled" him into inaction or somehow tricked or misled him into not pursuing a charge.

Plaintiff further argues that time 300-day period should be equitably tolled because he was not aware at the time that age discrimination was what had motivated Honeycutt not to hire him full-time. Plaintiff claims that he could not have known of the discrimination until after his counsel made a records request of defendants on April 9, 2013.[3]

The court rejects this second tolling argument as well. "[T]he starting date for the 300-day limitations period is when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated." Amini, 259 F.3d at 498-99 (citing E.E.O.C. v. United Parcel Serv., Inc., 249 F.3d 557 (6th Cir. 2001)). In light of the ADEA's "focus on 'the alleged unlawful employment practice[,]' it would contradict the statutory language to begin running the limitations periods from the time at which the facts supporting a charge of discrimination become apparent to a reasonable person, as opposed to the date the discriminatory employment practice itself is communicated to the plaintiff." Id. at 499 (quoting 29 U.S.C. § 626(d)(2)).

Plaintiff has acknowledged that he believed the failure to hire him full-time was unfair from the moment he found out that Honeycutt would not be recommending him to the Board of Trustees. He soon thereafter retained an attorney. Plaintiff has not shown any misconduct on defendants' part relating to the alleged records request that would justify tolling the limitations period. See Amini, 259 F.3d at 502 ("[W]e will not, absent other circumstances weighing in favor of

---

[3] Plaintiff has not submitted any evidence concerning the alleged April 9, 2013 records request.

equitable tolling, suspend the running of the statute of limitations in a discrimination action until the plaintiff learns sufficient facts that would lead him to suspect that the defendant acted with discriminatory intent. . . . [I]t might be years before a person apprehends that unpleasant events in the past were caused by illegal discrimination. In the meantime, under plaintiff's theory, the employer would remain vulnerable to suits based on these old acts.") (internal quotation marks omitted).

### 2. Legitimate Non-Discriminatory Reason not to Hire

Even if plaintiff had timely filed his EEOC charge, the court finds that his age discrimination charge fails on the merits. Assuming for purposes of the present motion that plaintiff has shown a *prima facie* case of discrimination, see McDonnell Douglas v. Green, 411 U.S. 792, 802 (1972), defendants have conclusively established that they had a legitimate, non-discriminatory reason to not hire plaintiff for the full-time position. See Sutherland v. Michigan Dep't of Treasury, 344 F.3d 603, 614-15 (6th Cir. 2003) ("Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action at issue.").

Defendants have satisfied this burden. Defendants have established that Honeycutt selected who received the full-time positions based on an objective, thorough and careful process. Honeycutt testified that he ranked the candidates based on their scores from the panel interview. Alongside those rankings, he listed each candidate's written test score. Honeycutt used the panel rankings and test scores to select who would be offered the full-time positions. Defendants have submitted the underlying data to support their assertion that plaintiff was ranked seventh in the panel interview scores and that his written test score fell below the scores of the second- through sixth-ranked candidates. And it was not the case that plaintiff was in a virtual tie with those candidates – his scores were measurably below those of the individuals ranked ahead of him. His panel score was 124, while those ranked ahead of him scored from 128 to 140. His written score was 79, while those ranked ahead of him scored 82 to 85.

When a defendant meets its burden of establishing a legitimate, non-discriminatory reason for the adverse employment action, "the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." Sutherland, 344 F.3d at 615. A plaintiff may establish pretext by showing that the proffered reason: "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009).

9

Plaintiff's sole argument for pretext is that one of the four panel members, Captain Corey Weekly, gave plaintiff an unduly low score. Plaintiff received scores of 138, 127 and 124 from the other panel members; Weekly scored him at 105. Weekly was 28 or 29 years old when the panel interviews were conducted. (Weekly Dep. at 45). When asked to explain his score of plaintiff, Weekly stated that plaintiff "did not have the wow factor" that several other candidates did. (Id. at 11). Weekly also testified that other candidates "did a better job of selling" themselves than plaintiff did. (Id. at 24). Plaintiff contends that Weekly's use of the "wow factor" was "code for age discrimination." (Doc. 24 at PAGEID 408).

The court considers this argument to be one under a "cat's paw" theory of liability. Plaintiff has not shown any discriminatory animus on the part of the decision makers, who were Honeycutt and the Board of Trustees. See Arendale v. City of Memphis, 519 F.3d 587, 604 n.13 (6th Cir. 2008) ("When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, . . . the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability."). Instead, plaintiff argues that Weekly's low score influenced the rankings upon which Honeycutt relied.

A plaintiff proceeding under a cat's paw theory must show: (1) the existence of an individual motivated by discriminatory animus; (2) who intended to cause an adverse employment action; and (3) proximately caused the adverse employment action. Staub, 562 U.S. at 422; Chattman v. Toho Tenax Am., Inc., 686 F.3d 339, 351 (6th Cir. 2012).

Plaintiff has not put forth evidence in support of these three elements of a cat's paw theory. The assertion that the "wow factor" was a proxy for discriminatory animus finds no support in the record and amounts to pure speculation. Plaintiff has not attempted to show that a correlation exists between age and the scores which Weekly gave to the approximately 25 candidates ranked on Honeycutt's scoring matrix. Nor did plaintiff examine Weekly during his deposition about whether the candidates' ages played a factor in his scoring. The worksheet which Weekly completed for the panel's interview of plaintiff offers no suggestion of discriminatory animus. On the worksheet, Weekly explained two of the lower subscores which he gave to plaintiff, stating that plaintiff could have given a more informative answer to one of the questions and that he failed to give a clear answer to another. (Doc. 24-9 at PAGEID 1120; Weekly Dep. at 22-23).

Likewise, plaintiff has not shown that Weekly intended to prevent plaintiff from being hired full-time. As defendants point out, Weekly generally assigned lower scores to candidates than the other panel members did, and he gave seven other ranked candidates a score below the score he

gave Valley. (Doc. 20-3 at PAGEID 188). Moreover, there is no evidence that Weekly attempted to influence the scores given by the other panel members or that he attempted to influence Honeycutt regarding plaintiff other than through the score he gave.

Finally, plaintiff is unable to show that Weekly proximately caused the adverse employment action. If Weekly's score for plaintiff were excluded from the rankings, plaintiff's panel score would rise from 124 to only 130. The two individuals selected by Honeycutt had scores of 139 and 137, as well as higher test scores than plaintiff had. Further, because Weekly generally gave lower scores than did the other panel members, removing Weekly's scores entirely from the top seven ranked candidates would still leave plaintiff in the seventh-ranked position.

Accordingly, defendants are entitled to summary judgment on plaintiff's claim for age discrimination.

### B. Retaliation

#### 1. Retaliatory Suspension

Plaintiff alleges that defendants violated the ADEA by suspending him in retaliation for raising questions and complaints with Honeycutt and Wise about why he was not selected for a full-time position. The ADEA prohibits an employer from retaliating against an employee who "has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

The court finds that this claim is barred because plaintiff, who was informed of the suspension on December 27, 2012, did not file his EEOC charge until November 20, 2013, after the 300-day time period for filing a charge had ended. See Amini, 259 F.3d at 498.

The court further finds that this claim, even if timely, fails because plaintiff cannot establish a *prima facie* case. "Plaintiff has the initial burden to establish a *prima facie* case of retaliation under the ADEA by establishing that: (1) he engaged in protected activity when he made his age discrimination complaint; (2) Defendant knew about his exercise of the protected activity; (3) Defendant thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action." Spengler v. Worthington Cylinders, 615 F.3d 481, 491-92 (6th Cir. 2010).

Plaintiff concedes that protection from retaliation is triggered by "the assertion of statutory rights." E.E.O.C. v. Romeo Cmty. Schs., 976 F.2d 985, 989 (6th Cir. 1992). "In order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the

11

ADEA." Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir. 2007). In Fox, the plaintiff complained to his employer that management was "out to get him," and he warned that he would be suing the company. Id. at 592. He did not assert that management had engaged in age discrimination or acted with age bias. The Sixth Circuit held that "Fox's vague charge that Eagle management was 'out to get him' is insufficient to constitute opposition to an unlawful employment practice and does not merit ADEA protection." Id.

Here, it is uncontroverted that plaintiff did not complain of age discrimination or even mention his age in his meetings with Honeycutt and Wise. Plaintiff questioned the basis for why he was not selected and disputed the validity of the felony charges reported on the background check and of the red flags from the psychological test. Although he complained to Wise that the process was not fair, he ascribed the unfairness to not getting a "legitimate answer" from Honeycutt rather than to age bias. Plaintiff's contesting the decision not to hire him full-time, without reference to age bias, does not constitute a protected activity under the ADEA. See Speck v. City of Memphis, 370 Fed. App'x 622, 626 (6th Cir. 2010) ("Speck must have referenced alleged acts of age discrimination by the City to maintain her retaliation claim. . . . Speck produced no evidence that she ever mentioned age discrimination in any of her complaints before resigning. She complained about being targeted for unfair treatment, but not about being targeted because of her age.") (internal quotation marks and citation omitted); Willoughby v. Allstate Ins. Co., 104 Fed. App'x 528, 531 (6th Cir. 2004) ("The district court properly granted summary judgment because the letter was contesting the correctness of a decision made by his employer rather than asserting discrimination.").

### 2. Retaliatory Termination

The court finds that plaintiff's claim for retaliatory termination likewise fails because plaintiff did not engage in activity protected under the ADEA. Following his suspension, plaintiff participated in an investigatory interview with Wise and legal counsel for the Township, engaged in records requests with defendants, and attended and testified at a pre-disciplinary hearing before the Board of Trustees. During this entire process, which spanned six months until his termination, plaintiff never complained of age discrimination or suggested that defendants had acted with age bias.

Plaintiff's unsupported assertion that defendants "completely silenced" him is without merit. (Doc. 24 at PAGEID 410). Plaintiff was represented by legal counsel throughout the process, was

able to speak at the investigatory interview and pre-disciplinary hearing, and was able to obtain documents from defendants.

Accordingly, defendants are entitled to summary judgment on plaintiff's claims for retaliation under the ADEA.

### C. First Amendment

The complaint alleges that defendants violated plaintiff's right to free speech under the First Amendment because they suspended and terminated him for having questioned Honeycutt and Wise about why he was not hired full-time. Wise is named as a defendant in his official capacity as Township Administrator. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994).

The complaint seeks monetary damages in relief for the alleged First Amendment violation. However, the Sixth Circuit has recognized that "[t]he Constitution does not directly provide for damages." Sanders v. Prentice–Hall Corporation Sys., Inc., No. 97-6138, 1999 WL 115517, at *1 (6th Cir. Feb. 8, 1999). "[C]onstitutional violations by state officials are not cognizable directly under the [C]onstitution (or by virtue of general federal question jurisdiction) because 42 U.S.C. § 1983 provides the exclusive remedy for such constitutional violations." Id., 1999 WL 115517, at *1 n.2 (citing Thomas v. Shipka, 818 F.2d 496, 499 (6th Cir. 1987)).

Plaintiff argues that his First Amendment claim puts defendants on notice that he is seeking protection under § 1983. The court disagrees, as the complaint fails to use § 1983's well-known "under color of law" terminology and fails to reference the familiar "policy or custom" standard for imposing municipal liability under § 1983. See West v. Atkins, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

But even if the court were to construe the claim as arising under § 1983, it would fail for the reason that plaintiff did not engage in protected speech. "When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 386 (2011). Plaintiff's speech did not involve a matter of public concern, for as plaintiff admits, he "merely wanted an explanation on how he was not the best fit for the job." (Doc. 24 at PAGEID 420; see also Valley Aff., ¶¶ 12, 24 (stating that he met with Honeycutt and Wise to present "my questions on why I was not hired")). Plaintiff's speech thus represented the

13

internal airing of a personal grievance about not getting a full-time job – first directed to Honeycutt, his immediate supervisor, and then directed up the chain of command to Wise. See Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1226 (6th Cir. 1997) ("Speech does not generally touch on a matter of public concern, as that requirement has been interpreted, where its aim is to air or remedy grievances of a purely personal nature."); Van Compernolle v. City of Zeeland, 241 Fed. App'x 244, 250 (6th Cir. 2007) ("[I]t is clear that internal grievances that are purely personal in nature are not matters of public concern.").

Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment claim.

### D. Wrongful Discharge

Plaintiff's final claim is for wrongful discharge in violation of public policy. Plaintiff contends that his termination was contrary to the public policy embodied by the First Amendment the ADEA, and Ohio Revised Code § 4112.14 (prohibiting age discrimination by employers in Ohio).

Defendants correctly argue that a claim for wrongful discharge in violation of public policy is not available when plaintiff has statutory remedies available which would provide complete relief. As the Ohio Supreme Court has held, "a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in R.C. Chapter 4112 provide complete relief for a statutory claim for age discrimination." Leininger v. Pioneer Nat'l Latex, 115 Ohio St. 3d 311, 319 (Ohio 2007). Here, § 1983 would provide complete relief for the alleged First Amendment violation, and the ADEA and O.R.C. § 4112 would provide complete relief for the alleged age discrimination and retaliation. Id. at 317 ("It is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy."); Wiles v. Medina Auto Parts, 96 Ohio St. 3d 240, 244 (Ohio 2002) ("Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.").

Accordingly, defendants are entitled to summary judgment on plaintiff's wrongful discharge claim.

14

**IV.     Other Pending Motions**

   **A.     Motion to Strike**

Defendants have moved to strike the affidavit of plaintiff on the grounds that it contains a mixture of legal conclusions, statements not based on personal knowledge and statements which contradict plaintiff's prior deposition testimony.  See Fed. R. Civ. P. 56(c)(4); Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997).  The court grants the motion in part and denies the motion in part.  See Upshaw v. Ford Motor Co., 576 F.3d 576, 593 (6th Cir. 2009) (advising that when considering a motion to strike, courts should "use a scalpel, not a butcher knife" and strike only portions that are inadmissible under Fed. R. Civ. P. 56(c)(4)).

The court strikes certain statements that amount to legal conclusions, such as the statements that defendants treated plaintiff "differently based on my being over the age of 40," "my First Amendment rights were violated" and "my asking questions were a matter of serious public concern."  (Valley Aff. ¶¶ 35, 39, 44-46).

The court will not strike the remainder of the affidavit.  The statements that defendants characterize as being not based on personal knowledge are expressions or descriptions of what plaintiff felt about his interactions with defendants.  (Doc. 24-1 at ¶ 27 ("I thought that if it was based on a fair process, there should have been very obvious reasons why I was not hired."), ¶ 29 ("I was shocked at how quickly it escalated . . . .").  Plaintiff is competent to describe his own feelings about his exchanges with defendants.  See Hollar v. RJ Coffey Cup, LLC, 505 F.Supp.2d 439, 447 (N.D. Ohio 2007) (denying motion to strike paragraph of affidavit that "describe[d] her own feelings and interpretation of" an event at issue).

Likewise, the court declines to strike portions of the affidavit that defendants claim contradict plaintiff's deposition testimony.  These statements concern plaintiff's discussion with Honeycutt on December 18, 2012.  (Doc. 24-1 at ¶¶ 11-13, 16).  The court finds that the statements "flesh out," rather than contradict, plaintiff's deposition testimony about his conversation with Honeycutt.  See Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006) ("[A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony.").

B.     **Motion for Sanctions**

1.     **Spoliation of the 2012 Performance Review**

Plaintiff has moved for sanctions regarding two alleged discovery abuses. The first concerns defendants' alleged spoliation of a 2012 performance evaluation document. According to plaintiff, he received good job reviews every year that he worked as a part-time firefighter for the Township. (Valley Aff., ¶ 2). Plaintiff's 2012 review was good as well. (June 6, 2013 Hr'g Tr. at 94). The reviews were prepared by Fire Department lieutenants. (Wise Dep. at 44, 46, 50).

The 2012 performance reviews of all members of the Fire Department were kept in Wise's office. (Wise Dep. at 44). Wise later had concerns that the lieutenant who had prepared the 2012 reviews had simply rubber-stamped them and had given all of the firefighters a good review. (Id. at 49-50). Wise set the 2012 reviews aside for further scrutiny but at some point "misplaced the files." (Id. at 44). Despite trying to relocate the reviews, he was not able to find them. (Id.).

Spoliation refers to the loss of evidence that is presumed to be unfavorable to the party responsible for its loss. See United States v. Boxley, 373 F.3d 759, 762 (6th Cir. 2004) (citing Nationwide Mut. Fire Ins. Co. v. Ford Motor Co., 174 F.3d 801, 804 (6th Cir. 1999)). A litigant may be sanctioned for spoliation when: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the accused party destroyed the evidence with a culpable state of mind; and (3) the destroyed evidence is relevant to the other side's claim or defense. Beaven v. U.S. Dep't of Justice, 622 F.3d 540, 553 (6th Cir. 2010)).

The court finds that the first and third elements of spoliation are satisfied here. On January 3, 2013 – shortly after plaintiff became aware that he would not be hired full-time and that he had been suspended – counsel for plaintiff made a written demand of counsel for the Township to preserve all personnel records relating to plaintiff. (Doc. 25-2). In a situation where the Township had taken two employment actions adverse to plaintiff, it should have been clear to the Township and its counsel that the most recent evaluation of plaintiff's job performance would be relevant to any future litigation challenging those adverse employment actions.[4]

As to the second element, a culpable state of mind requires a showing that the party destroyed the evidence knowingly or negligently. Beaven, 622 F.3d at 554. "Because failures to produce relevant evidence fall along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the

---

[4] Wise was uncertain as to exactly when he misplaced the reviews and acknowledged that they may not have gone missing until 2014 or 2015, after this suit was filed. (Wise Dep. at 44-45).

16

circumstances of the case, correspond to the party's fault. Adkins v. Wolever, 554 F.3d 650, 652-53 (6th Cir. 2009).

Here, defendants' loss of the performance review was not a knowing or intentional destruction of evidence. Importantly, the loss did not target plaintiff – Wise lost the 2012 performance reviews of all Fire Department employees. At most, defendants' loss of evidence was negligent.

Furthermore, the loss of plaintiff's performance review has not seriously compromised his case. Plaintiff has been able to present other evidence, including the testimony of Honeycutt and Wise, to support the assertion that he received a good review. (June 6, 2013 Hr'g Tr. at 30, 48; Spitler Dep. at 24).

The court finds that the appropriate sanction is permitting an adverse inference that plaintiff received a good and satisfactory performance review for 2012. Making such an inference, however, does not change the result on the motion for summary judgment. Even assuming that plaintiff has shown a *prima facie* case of age discrimination (including that he was qualified for the full-time position), his claim fails for the reasons stated above.

### 2. Disclosure of the Scoring Matrix

The second prong of plaintiff's motion for sanctions relates to defendants' alleged late disclosure of Honeycutt's scoring matrix. In April 2015 plaintiff served defendants with requests for production of documents which covered personnel files and other documents maintained by management with respect to plaintiff. (Doc. 25-1 at PAGEID 1157). Plaintiff argues that the matrix was not disclosed during document production and that he did not receive the matrix until Honeycutt's deposition on October 16, 2015.

The court denies this prong of the motion for sanctions for three reasons. First, counsel for defendants has submitted an affidavit stating that he believes the scoring matrix was produced and made available to plaintiff's counsel at a document inspection in July 2015. (Doc. 28-7, Riepenhoff Aff., ¶ 6). Plaintiff has submitted no evidence in support of his claim that the matrix was not disclosed during document production; it is simply an assertion that he makes in his motion.

Second, the alleged late disclosure was harmless and did not prejudice plaintiff. See Fed. R. Civ. P. 37(c)(1). Honeycutt mentioned the scoring matrix at the beginning of his deposition. (Honeycutt Dep. at 9). A break was taken shortly thereafter and defendants' counsel provided a copy of the matrix to plaintiff's counsel. (Riepenhoff Aff., ¶ 7; Honeycutt Dep. at 38). Plaintiff's counsel examined Honeycutt about how he prepared the matrix and what the scores and rankings

meant, and counsel marked the matrix as a deposition exhibit. (Id. at 9, 38-47, 101). Plaintiff's counsel was then able to use the matrix in his depositions of several members of the Fire Department, including Captain Weekly, in December 2015. (Weekly Dep. at 23-24, 43-46; Spitler Dep. at 14-21; Doc. 24-6, Hancock Dep. at 5-6).

Finally, to the extent plaintiff's counsel believed that the alleged late disclosure caused any surprise or prejudice, he should have sought alternative relief prior to moving for sanctions. See Local Civ. R. 37.1. Counsel could have, for instance, sought to reopen the deposition of Honeycutt to further examine him about the matrix. Instead, plaintiff waited until after the close of discovery to file a motion for sanctions. This was contrary to the letter and spirit of Local Rule 37.1.

## V. Conclusion

For the reasons set forth above, defendants' motion for summary judgment (doc. 20) is granted. Defendant's motion to strike plaintiff's affidavit (doc. 26) is granted in part and denied in part. Plaintiff's motion for sanctions (doc. 25) is granted in part and denied in part.

                                      s/ James L. Graham  
                                      JAMES L. GRAHAM  
                                      United States District Judge

DATE: February 7, 2017